IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTONIO C. MONROE,

Petitioner,

v.   Civil Action No. **3:16CV856**

**DIRECTOR OF THE VIRGINIA
DEPARTMENT OF CORRECTIONS,**

Respondent.

## MEMORANDUM OPINION

Antonio C. Monroe, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1). By Memorandum Opinion and Order entered on June 30, 2017, the Court granted Respondent's Motion to Dismiss with respect to Claim Two, denied it without prejudice with respect to Claims One, Three, and Four, and directed Respondent to file a further response addressing the merits of Claims One, Three, and Four. *Monroe v. Va. Dep't of Corr.*, No. 3:16CV856, 2017 WL 2837139, at *4 (E.D. Va. June 30, 2017).

On July 31, 2017, Respondent filed a Supplemental Motion to Dismiss. (ECF No. 18.) Monroe has filed a response and a Motion for an Evidentiary Hearing. (ECF No. 22.) For the reasons stated below, the Supplemental Motion to Dismiss will be GRANTED and Monroe's Motion for an Evidentiary Hearing will be DENIED.

### I.   PROCEDURAL HISTORY

On June 3, 2014, in the Circuit Court for the City of Virginia Beach, Virginia ("Circuit Court"), Monroe pled guilty to possession with the intent to distribute cocaine; possession of a firearm by a non-violent felon; conspiracy to manufacture, sell, give, or distribute cocaine; and

possession with the intent to distribute cocaine, second or subsequent offense. (ECF No. 2–1, at 2.) On October 2, 2014, the Circuit Court entered judgment against Monroe and sentenced him to a total of 42 years of imprisonment, with all but seven years and six months suspended. *Commonwealth v. Monroe*, No. CR13–3506, at 2 (Va. Cir. Ct. Oct. 2, 2014). Monroe did not appeal.

On January 15, 2014, Monroe filed a petition for a writ of habeas corpus in the Circuit Court. Petition for Writ of Habeas Corpus at 1, *Monroe v. Dir. of the Dep't of Corr.*, No. CL15–132 (Va. Cir. Ct. filed Jan. 15, 2014). On April 23, 2015, Monroe filed a Motion for Nonsuit. Petitioner's Motion for Nonsuit at 1, *Monroe v. Dir. of the Dep't of Corr.*, No. CL15–132 (Va. Cir. Ct. filed Apr. 23, 2015). On April 28, 2015, the Circuit Court granted Monroe's motion and nonsuited his petition for a writ of habeas corpus. *Monroe v. Dir. of the Dep't of Corr.*, No. CL15–132, at 1 (Va. Cir. Ct. Apr. 28, 2015).

On September 28, 2015, Monroe filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. Petition for Writ of Habeas Corpus at 1, *Monroe v. Clarke*, No. 151451 (Va. filed Sept. 28, 2015). In his petition, Monroe raised the following claim for relief:

| | |
|---|---|
| Claim One: | "The defense attorney did not adequately communicate with him or investigate his case. The fact that the officers had no search warrant or affidavit at the time of entry was not argued by his attorney, therefore overlooked by the courts." (*Id.* at 8.) |

On May 16, 2016, the Supreme Court of Virginia dismissed Monroe's habeas petition. (ECF No. 9–1, at 2.) Specifically, the Supreme Court of Virginia stated:

> In a portion of claim (1), petitioner contends evidence recovered by the police should have been suppressed because there was no probable cause to support the issuance of a search warrant. Specifically, the information provided by the confidential informant did not offer sufficient personal knowledge of

possible criminal activity to support probable cause, but instead, drew conclusions based on "mere belief."

The Court holds that this portion of claim (1) is barred because a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea. *Peyton v. King*, 210 Va. 194, 196–97, 169 S.E.2d 569, 571 (1969).

In another portion of claim (1), petitioner contends the evidence was insufficient to sustain his convictions because it failed to establish that he possessed the cocaine discovered at his apartment. Petitioner asserts the evidence failed to show he had "knowledge and dominion" over the cocaine because he was not the sole occupant of the residence and he was not present when the residence was searched.

The Court holds that this portion of claim (1) is barred because a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea. *Id.*

In another portion of claim (1), petitioner contends that his convictions should be overturned because the police did not have a valid warrant when they searched his apartment. Petitioner attaches copies of the search warrant and alleges the warrant's date of execution has been altered because the search warrant was filed, and the "inventory and return" was completed, two days after the warrant was executed. Petitioner further contends the search warrant was never actually filed because petitioner requested a copy of the warrant while he was incarcerated, but the document was not on file with the circuit court. In support of this claim, petitioner attached an inmate request form from the Virginia Beach Correctional Center showing petitioner requested from the Correctional Center a copy of the search warrant and was advised no warrant had been filed with "this office."

The Court holds that this portion of claim (1) is barred because a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea. *Id.*

In another portion of claim (1), petitioner contends he was denied the effective assistance of counsel because counsel failed to adequately communicate with petitioner or investigate his case. Specifically, petitioner alleges he advised counsel of the defects in the search warrant, but counsel refused to challenge the validity of the warrant on the ground that it was not supported by probable cause and was not properly filed.

The Court rejects this portion of claim (1) because petitioner failed to offer a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate. *Anderson v. Warden*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981).

(ECF No. 9–1, at 1–2.)

Thereafter, Monroe filed the present § 2254 Petition in which he raises the following claims for relief:[1]

| | |
|---|---|
| Claim One: | "The petitioner has offered a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate." (*Id.* at 5.) |
| Claim Two: | "The search upon which the prosecutor relied exclusively for physical, damning evidence violated the Fourth and Fourteenth Amendments to the U.S. Constitution [and] their Virginia counterparts based upon the facial invalidity of the search warrant." (*Id.* at 6.) |
| Claim Three: | "The chain of custody of the items of evidence eventually alleged to have been seized at the residence was clearly, unambiguously, and unequivocally broken when other individuals were in the residence for long periods immediately prior to the search when the defendant was not present." (*Id.* at 8.) |
| Claim Four: | "Monroe was deprived of his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments when counsel failed and refused to raise the issues set forth herein above and argue them before the state court." (*Id.* at 10.) |

The Court generously construed Monroe to argue that his plea was invalid due to errors of counsel. Because Respondent failed to demonstrate that the procedural bars should be enforced with respect to Claims One, Three, and Four, and because Respondent had not addressed Monroe's claim that counsel caused Monroe to enter an involuntary plea of guilty, the Court denied without prejudice the Motion to Dismiss with respect to those claims and ordered further briefing. *Monroe v. Va. Dep't of Corr.*, No. 3:16CV856, 2017 WL 2837139, at *4 (E.D. Va. June 30, 2017).

---

[1] The Court employs the pagination assigned to Monroe's submissions by the CM/ECF docketing system. The Court corrects the punctuation and capitalization in quotations from Monroe's submissions.

## II. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

### A. Applicable Law

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### B. Claim Addressed by the Supreme Court of Virginia

In Claim Three, Monroe contends that "[t]he chain of custody of the items of evidence eventually alleged to have been seized at the residence was clearly, unambiguously, and unequivocally broken when other individuals were in the residence for long periods immediately prior to the search when the defendant was not present." (§ 2254 Pet. 8.) Specifically, Monroe

5

argues that his "co-defendant's girlfriend and [his] girlfriend were in, and in control of, the residence during times immediately prior to the alleged time of the alleged execution of a search warrant. They undoubtedly had sufficient time and opportunity to plant evidence and/or tamper with existing evidence." (Mem. Supp. § 2254 Pet. 17–18.) In its June 30, 2017 Memorandum Opinion and Order, the Court "construe[d] Claim Three to assert that the evidence was not sufficient to support Monroe's convictions because the prosecution failed to establish that Monroe possessed the items seized from his residence." *Monroe v. Va. Dep't of Corr.*, No. 3:16CV856, 2017 WL 2837139, at *3 (E.D. Va. June 30, 2017).

Respondent argues that Monroe's claim challenging the sufficiency of the evidence is procedurally barred because the Supreme Court of Virginia applied the rule in *Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969), and refused to consider his claim on habeas review because a "voluntarily and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea." (ECF No. 9–1, at 1–2; Br. Supp. Supp'l Mot. Dismiss 16–18, ECF No. 20.) As explained below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." *United States v. Martinez*, 424 F. App'x 208, 209 (4th Cir. 2011) (quoting *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993)); *Peyton*, 169 S.E.2d at 571. By pleading guilty, Monroe waived his right to contest the sufficiency of the evidence underlying his convictions. *Martinez*, 424 F. App'x at 209; *Peyton*, 169 S.E.2d at 571. Thus, the Supreme Court of Virginia reasonably found that Claim Three was barred from review. Claim Three will therefore be DISMISSED.

6

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Monroe that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a

7

petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### B. Guilty Plea Proceedings and Factual Basis for Plea

At this point, because Monroe's claims of ineffective assistance of counsel stem from counsel's performance prior to and during the plea proceedings, the Court provides a summary of the plea hearing. During the guilty plea proceedings, Monroe agreed that he had discussed the charges with his attorney and that he had received "enough time to discuss with [his] lawyer any possible defenses [he] may have to the[] charges." (June 3, 2014 Tr. 7.) When asked, Monroe stated that he was entering his guilty pleas "freely and voluntarily" because he was "in fact, guilty of the crimes charged." (June 3, 2014 Tr. 7.) Monroe stated that he understood that by pleading guilty he gave up his rights to a jury trial, to confront witnesses, to defend himself, to remain silent, and to appeal. (June 3, 2014 Tr. 8–9.) When asked, Monroe denied that anyone had threatened or coerced him to plead guilty. (June 3, 2014 Tr. 8–9.) Monroe stated that he understood that the maximum punishment, if sentenced consecutively, was 125 years. (June 3, 2014 Tr. 9.) Finally, Monroe agreed that he was "[a]bsolutely" satisfied with counsel's services. (June 3, 2014 Tr. 9.)

As a factual basis for the plea, the parties proffered the following stipulation:

> The Commonwealth's evidence would establish that in July 2012, Detective M. Cox began working a case in which the Defendant, Antonio Cortez Monroe, was suspected of bringing narcotics into Virginia Beach. The investigation continued for several months and included controlled buys, trash pulls, and surveillance on the defendant and his residence. On March 25, 2013, Maryland Bondsman took the defendant, Antonio Cortez Monroe, into custody in Virginia Beach, for five outstanding warrants in Maryland. The bondsman notified Virginia Beach Police Detective M. Cox o[f] the arrest and held the defendant until Detective Cox arrived at South Lynnhaven Road (across the street from the apartment complex where he lived on [redacted]. Detective Cox advised the defendant of his constitutional rights. The defendant waived those rights and told Detective Cox he had marijuana in his room in his ashtray. He admitted his roommate, Satarie King, was in New York purchasing cocaine and would be coming back on a bus later that night. (Please see the attached copy of the defendant's statement).
>
> That same day, after speaking with Monroe, Virginia Beach Police executed a search warrant at [redacted]. The defendant, and co-defendant King, lived in the two bedroom apartment. Monroe's bedroom was on the left when entering the front door. Inside Monroe's bedroom, detectives recovered 91.2 grams of powder chunks of cocaine inside a container on the dresser, 24.0 grams of powder cocaine and marijuana in the pockets of a vest hanging on the inside of the door, a stun gun, in the middle left drawer, some currency, jewelry, and miscellaneous papers. (Please see the attached photographs). A firearm was found in the living room in a beanie. Co-defendant Satarie King admitted he had two firearms that he kept in his own bedroom, the firearm in the living room was Monroe's firearm. Two firearms were recovered from King's bedroom.
>
> The items recovered were packaged, sealed, vouchered and sent to the Department of Forensic Science for testing. DFS lab # T13-3495 establishes that the substances were Cocaine, a Schedule II drug, Marijuana. (Please see the attached copy of the certificate).
>
> Following the execution of the search warrant, the defendant again talked with detectives. Monroe admitted there was marijuana and cash in his bedroom. He said he didn't remember having cocaine in the bedroom. The only cocaine he knew about was the cocaine King left in a vest pocket in his room for him to sell in case clients came by while [K]ing was out of town. He admitted the bottle of supplement powder was used to "stretch out the coke." He admitted King was buying cocaine from New York and he had received about 4 ounces of cocaine from King since he moved to Virginia. He said the cocaine from New York was really pure and would flip one ounce into two which he sold for $1150/ounce.

(ECF No. 9–2, at 1–2.) When asked, Monroe agreed that the stipulation "would be the Commonwealth's evidence were the matter to proceed to trial today." (June 3, 2014 Tr. 10–11.)

9

The Circuit Court then pronounced Monroe guilty based upon his pleas of guilty and the stipulation of facts. (June 3, 2014 Tr. 11–12.)

### C. Claim One

In Claim One, Monroe asserts that he "has offered a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate." (§ 2254 Pet. 5.) In its June 30, 2017 Memorandum Opinion and Order, the Court noted that "[t]o the extent that Monroe is challenging the Supreme Court of Virginia's conclusion [with respect to Monroe's state habeas petition], Respondent is correct that Claim One does not provide any basis for federal habeas relief." *Monroe v. Va. Dep't of Corr.*, No. 3:16CV856, 2017 WL 2837139, at *2 (E.D. Va. June 30, 2017). The Court, however, generously construes Claim One to assert that Monroe's guilty plea was involuntarily entered because he was subjected to "coercive tactics" by counsel. (*Id.*)

In support of his claim, Monroe contends that "counsel overcame his will to plead not guilty and insist upon a jury trial by false representations that Monroe would definitely receive a life sentence in the event he opted to try the case." (Mem. Supp. § 2254 Pet. 10–11, ECF No. 2.) In response, trial counsel avers that he "did not tell [Monroe] he would receive a life sentence if he went to trial on the charges." (Br. Supp. Supp'l Mot. Dismiss Ex. 1 ¶ 4, ECF No. 20–1.) Monroe states under oath that counsel told him this. (ECF No. 22, at 10.) No need exists to resolve this dispute, however, because, as discussed below, Monroe cannot demonstrate the requisite prejudice. Monroe fails to demonstrate that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

While the record is not clear regarding the exact sentencing exposure Monroe faced, during his plea colloquy, Monroe indicated that he understood that the maximum sentence for the four charges to which he was pleading guilty was 125 years of incarceration. (June 3, 2014 Tr. 9.) At sentencing, the Circuit Court indicated its belief that Monroe faced a "range of punishment [of] life plus fifty-five years." (Sept. 30, 2014 Tr. 30.) Given the maximum punishment that Monroe faced, counsel's prediction that Monroe faced what would be the equivalent of a life sentence was not inaccurate.

In exchange for Monroe's guilty plea, the Commonwealth *nolle prossed* another firearm charge. (*See* Sept. 30, 2014 Tr. 25–26.) Monroe also avoided any enhanced sentence that the Commonwealth would have sought had he chosen to go to trial. (Br. Supp. Supp'l Mot. Dismiss Ex. 2 ¶ 4, ECF No. 20-2.)[2] By pleading guilty, Monroe received a total of 42 years of incarceration, with all but seven years and six months suspended. *Commonwealth v. Monroe*, No. CR13–3506, at 2 (Va. Cir. Ct. Oct. 2, 2014). Given the significantly lower sentence that he received by pleading guilty, Monroe simply has not demonstrated that counsel's alleged statement regarding his sentencing exposure prejudiced him in any way and "overcame his will to plead not guilty." (Mem. Supp. § 2254 Pet. 10.)[3]

---

[2] The record does not indicate what type of enhanced sentence the Commonwealth would have sought. The Court notes that prior to Monroe's guilty plea, the Commonwealth filed a Notice setting forth several of Monroe's prior convictions, including two drug convictions, that it intended to introduce into evidence at sentencing should Monroe elect to go to trial and be found guilty. Notice at 1, *Commonwealth v. Monroe*, No. CR13–3506 (Va. Cir. Ct. filed Nov. 20, 2013).

[3] A written statement by Monroe in his Presentence Report indicates that "the only reason why [I pled] guilty was cause if [I] went to [trial] and lost[, I] would get a lot of time (sic)." Presentence Report at 2, *Commonwealth v. Monroe*, No. CR13–3506, at 2 (Va. Cir. Ct. filed Aug. 19, 2014). Monroe clearly understood even after he entered into his guilty plea that he could face a lengthy sentence had he proceeded to trial.

In addition, Monroe admitted much of his involvement in the criminal activity to investigating officers and thus, his guilt was apparent. Monroe identifies no plausible defense that counsel could have advanced at trial that would have had a reasonable probability of resulting in anything other than his conviction. *Meyer*, 506 F.3d at 369. In light of the substantial sentencing benefit Monroe received from pleading guilty, and the compelling evidence of his guilt of the drug distribution and firearm counts, Monroe cannot demonstrate that a reasonable defendant in his position would have insisted on proceeding to trial.

Monroe's claim that counsel coerced him into pleading guilty is also belied by the record. During the plea colloquy, Monroe swore that he was entering his guilty pleas "freely and voluntarily" because he was "in fact, guilty of the crimes charged." (June 3, 2014 Tr. 7.) He also denied that anyone had threatened or coerced him to plead guilty. (June 3, 2014 Tr. 8–9.) Additionally, Monroe also agreed that he was "[a]bsolutely" satisfied with counsel's services. (June 3, 2014 Tr. 9.) To counter his response under oath that he was satisfied with counsel, Monroe now contends that during the plea colloquy "he felt that he was under undue pressure from counsel to assert his lack of voluntariness [and] agreed that he was satisfied with the services of counsel because he did not want to displease his counsel." (Resp. 5, ECF No. 22.) Monroe's statement makes little sense, as the Court fails to discern how counsel could pressure Monroe to "assert his lack of voluntariness." (*Id.*) Additionally, Monroe's allegations are vague and conclusory, as Monroe does not explain why he thought he was under undue pressure from counsel. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). More importantly, Monroe's allegations that counsel coerced him into pleading guilty are belied by Monroe's statements under oath. Because Monroe has failed to offer "clear

and convincing evidence to the contrary," he "is bound by the representations he ma[de] under oath during [his] plea colloquy." *Fields*, 956 F.2d at 1299 (4th Cir. 1992). For these reasons, Claim One will be DISMISSED.

### D. Claim Four

In Claim Four, Monroe asserts that he "was deprived of his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments when counsel failed and refused to raise the issues set forth herein above and argue them before the state court." (§ 2254 Pet. 10.) Specifically, Monroe faults counsel for failing to raise the argument regarding the sufficiency of the evidence that Monroe advances in Claim Three and for failing to raise various challenges to the search warrant issued for Monroe's residence.

With respect to the sufficiency of the evidence, Monroe admitted that there was marijuana in his bedroom and that his roommate had left cocaine for Monroe to sell. Any argument by the defense that the items seized during the execution of the search warrant were planted by Monroe's girlfriend and his roommate's girlfriend (*see* § 2254 Pet. 8) would have been meritless in light of Monroe's admissions. Counsel cannot be faulted for failing to raise a meritless claim. *See United States v. Moore*, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Monroe also suggests that counsel was ineffective for not raising various arguments regarding the validity of the search warrant. Specifically, Monroe contends that counsel should have raised the following arguments:

> (1) when Monroe sought a copy of the documents from jail, the Clerk advised him that there was no search warrant filed with respect to March 25, 2013 (see attached request dated 11/7/14, 22 months subsequent to the date in question); (2) the Clerk of Court stamped the date of receipt for the warrant as "March 27, 2013," 10:19 AM; (3) the search inventory and return was dated March 27, 2013, by both the "executing officer" and the Deputy Clerk of Court; (4) the execution itself purports to be 3/25/13, but it is patently apparent that the "5" was superimposed on top of a different date, the deputy clerk acknowledged receipt of

the execution on 3/27/13; (5) the affidavit for the search warrant was purportedly certified to the Circuit Court of Virginia Beach on March 25, 2013, by a magistrate; (6) a magistrate purportedly notarized the affidavit on March 25, 2013, but the differences in the magistrates' signatures reveal that different magistrates signed different parts of the warrant described hereinabove[.]

(Mem. Supp. § 2254 Pet. 14–16.) Overall, Monroe argues that "[t]he search warrant purportedly executed by the officers on March 25, 2013, is facially invalid and was actually completed and signed on March 27, 2013." (*Id.* at 13–14.)

Monroe believes that he would have prevailed on his suppression motion had counsel argued that there was no valid search warrant issued for the search of Monroe's residence on March 25, 2013. Instead, counsel filed a Motion to Suppress arguing that "the search warrant executed at a residence where the defendant occasionally resided lacked sufficient probable cause to allow the subsequent search of this residence." Motion to Suppress at 1, *Commonwealth v. Monroe*, No. CR13–3506 (Va. Cir. Ct. filed Feb. 21, 2014). The Circuit Court denied the Motion to Suppress following an evidentiary hearing. *Commonwealth v. Monroe*, No. CR13–3506, at 1 (Va. Cir. Ct. Mar. 26, 2014).

As an initial matter, Monroe's contention that multiple magistrates signed various parts of the warrant is based upon sheer speculation, and nothing in the record supports this allegation. Moreover, Monroe's various allegations regarding when the search warrant was actually issued and executed clearly lack merit. The record before the Court reflects that the search warrant for Monroe's residence was issued and executed on March 25, 2013. Motion to Dismiss Ex. 2h, at 1–2, *Monroe v. Clarke*, No. 151451 (Va. filed Nov. 20, 2015). The search warrant, inventory, and return were filed with the Circuit Court on March 27, 2013. *Id.* at 2. The fact that the search warrant, inventory, and return were filed two days after the issuance and execution of the search warrant does not establish that the search of Monroe's residence was conducted without a

warrant. *Cf. United States v. Eustach*, 21 F. App'x 150, 155 (4th Cir. 2001); *United States v. Gieswein*, Nos. CR-07-120-F, CIV-11-21-F, 2011 WL 13071652, at *8 (W.D. Okla. July 21, 2011) (noting that there is no "requirement under the Fourth Amendment that requires all the dates on the return to be correct in order for the search or search warrant to be valid"). Because the search warrant was not filed with the Circuit Court until March 27, 2013, the Circuit Court correctly told Monroe that it had no record of a search warrant in his matter being filed on March 25, 2013. Thus, counsel acted reasonably in deciding not to raise these frivolous arguments in the Motion to Suppress.

Moreover, Monroe fails to demonstrate any resulting prejudice from counsel's decision not to challenge the facial validity of the search warrant. To demonstrate prejudice, Monroe must demonstrate that his "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). As noted above, Monroe's various arguments about the validity of the warrant either lack merit or are based upon speculation, and nothing in the record supports a conclusion that the search of Monroe's residence was conducted without a valid warrant. Thus, Monroe fails to demonstrate that the outcome of the Motion to Suppress would have been different had counsel raised these arguments. Because Monroe has failed to demonstrate any deficiency of counsel or resulting prejudice, Claim Four will be DISMISSED.

### IV. OUTSTANDING MOTION

Monroe has filed a Motion for an Evidentiary Hearing. (ECF No. 22.) The decision to grant an evidentiary hearing is left to the "sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citations omitted). A federal court must consider whether

the evidentiary hearing would provide the petitioner the opportunity to "prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474 (citing *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000)). The court must also consider the standards prescribed by section 2254 when considering whether an evidentiary hearing is appropriate. *Id.* Monroe vaguely asserts that an evidentiary hearing is necessary so that "[t]he court [can] observe and evaluate both counsel and Monroe on the witness stand to enable the Court to evaluate the credibility and demeanor of the witnesses." (ECF No. 22, at 4.) However, this matter does not present any issues of credibility that need to be resolved with an evidentiary hearing. Accordingly, Monroe's Motion for an Evidentiary Hearing (ECF No. 22) will be DENIED.

## V. CONCLUSION

For the foregoing reasons, Respondent's Supplemental Motion to Dismiss (ECF No. 18) will be GRANTED. Claims One, Three, and Four will be DISMISSED. Monroe's § 2254 Petition (ECF No. 1) and his Motion for an Evidentiary Hearing (ECF No. 22) will be DENIED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Monroe fails to meet this standard. Accordingly, a certificate of appealability will be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/
J. ___
United States District Judge

Date: October 20, 2017
Richmond, Virginia